---o---

M. S. HULL, Respondent, *vs.* CITY OF KANSAS, Appellant.

1. *Damages—Injuries by reason of bad streets combining with other causes.*— If the driver of a horse is in the exercise of ordinary care and prudence, and injuries done the animal are attributable to the insufficiency of the street conspiring with some accidental cause the municipality is liable in damages.

*Appeal from Jackson Circuit Court.*

*Brumbach*, for Appellant.

I. It cannot be contended that the city is bound to keep all its streets in such condition that horses harnessed to buggies becoming unmanageable from viciousness, fright, disease, or any kind of accident, against which, owners or drivers cannot guard, may move in safety over every street from side to side, and end to end. If instead of the hole there had been

at the same spot, a gas lamp-post or a telegraph pole, damage would have ensued. Would the city then have been liable?

It is no answer to the argument to say, that the hole was a dangerous place or dangerous to those using the street in the ordinary or usual way, and therefore the city must be charged. That is simply begging the question. There was here no use of the street in the ordinary usual way at the time of the injury. The most that can be said is, that the city owed to the public the duty to keep its streets in a safe condition for use in the usual mode by travelers. (Dill. Mun. Corp., 754, Chap. 23 [1st. Ed.], § 789 and cases; Titus vs. Inhabitants of Northbridge, 97 Mass., 258, and note; Fogg vs. Nahant, 98 Mass., 578; Babson vs. Rockford, 101 Mass., 93.)

IV. Hull was violating the Sunday law in carrying on his business, and would not have been injured if he had not been in violation of law. (1 Wagn. Stat., 504; Shearm. & Redf., Neg. [1st Ed.], § 39, and cases cited, Ch. 3, p. 40; Jones vs. Andover, 10 Allen, 18.)

*Tichenor & Warner*, for Respondent.

I. The charter of defendant as to control over its streets is the same as that of St. Louis under which said city was held liable in a like case. (Blake vs. The city of St. Louis, 40 Mo., 570; Sess. Acts 1870, p. 333, § 7.)

II. Neither the charter of defendant, nor the statutes (§§ 32-34; 1 Wagn. Stat., 504), nor Blake vs. The city of St. Louis relieve the defendant from the duty of keeping its streets safe from travel on Sunday.

III. The cases relied on by the defendant to-wit: Titus vs. The Inhabitants of Northbridge, 97 Mass., 265, and 98 Mass., 578, expressly except cases like this, and the court expressly asserts that if the horse is only momentarily uncontrolled by his driver it is no defense. In the case at bar the horse only backed the length of buggy, and was not vicious or frightened before he fell in. (Babson vs. Inhabitants of Rockport, 101 Mass., 93.)

IV. The true rule is laid down in Winship vs. Enfield 42 N. H., 197; see pp. 214–215, and authorities cited.

NAPTON, Judge, delivered the opinion of the court.

This action was to recover damages for an injury to a horse and buggy, alleged to have been occasioned by a hole in a street, negligently left uncovered by the city authorities.

The facts appeared to be, that the driver of the buggy when attempting to turn from one street into another, got one of the lines entangled under the horse's tail, which caused the horse to commence backing, and as the driver was about to jump out, the horse fell into this hole in the embankment on which the street was built.

The court, on the trial, declared the law to be "that it was the duty of the defendant to keep its streets in a proper state of repair, so that they should be reasonably safe for travel, and if the defendant permitted one of its streets to be and remain out of repair, and at the time said street was so out of repair, the plaintiff's horse and buggy were being driven along the same, and without the fault of the driver, the horse and buggy of plaintiff were injured by reason of said street being out of repair, then the plaintiff is entitled to recover, even though such injury was the combined result of accident and of the defendant's neglect to keep said street in repair; provided the driver of said horse was in no fault."

The court refused to declare the law as asked by defendant, that if the defect in the street was not the sole cause of the injury, no recovery could be had; and therefore if before the accident, the driver of the horse had lost all control over him, and the horse continued uncontrollable at the time of the accident, the plaintiff could not recover.

Another instruction was asked; that if this occurred on Sunday, and the plaintiff who was the owner of the horse and buggy had hired them out on that day from his livery stable, no recovery could be had.

There was a verdict and judgment for plaintiff. The point presented by the instructions in this case, I understand, was decided at the last term at St. Joseph, in the case of Bassett vs. The City of St. Joseph, 53 Mo., 290, in which

case, this court adopted the view taken by the New Hampshire court in Winship vs. Enfield, 42 N. H., 202, and declined to follow the decisions in Massachusetts, referred to in the brief of defendant's counsel.

The Circuit Court of Jackson County evidently adopted the views of the New Hampshire cases, and determined, that although the injury was the result of accident, in the temporary loss of control over the horse; yet, if that accident would have resulted in no damage, had the street been in a proper repair, the city must be held responsible.

Indeed, it is not very clear that the Massachusetts cases go to the extent of holding that a mere temporary loss of control over the horse driven along the street would relieve the city from responsibility. It is held, that where the horse escapes from the driver entirely, or is totally ungovernable, or is a vicious animal, the damage occasioned is not chargeable to the city or town, because it ultimately occurs in a street or at a place where the street is out of repair.

In this case the driver had not lost control of the horse, except during the short period of his backing into the hole, and if no such hole had been there, no damage would have occurred. In the case of Hunt vs. Pownall (9 Verm., 411), Redfield, J. said: "In every case of damage occurring on a highway, we could suppose a state of circumstances in which the injury would not have occurred. If the team had not been too young, or restive, or too old, or too headstrong, or the harness had not been defective, or the carriage insufficient, no loss would have intervened. It is to guard against these constantly occurring accidents that towns are required to guard in building highways. The traveler is not bound to see to it that his carriage and harness are always perfect, and his team of the most manageable character and in the most perfect training, before he ventures upon the highway. If he could be always sure of all this, he would not require any further guaranty of his safety unless the roads were absolutely impassable. If the plaintiff is in the exercise of ordinary care and prudence and the injury is attributable to the insufficiency of the road,

conspiring with some accidental cause, the defendants are liable."

This is in substance the position of the Circuit Court in its instructions in the case.

Judgment affirmed. Judges Wagner and Sherwood absent.